party thereto (*Cutting* v. *Bryan*, 206 Cal. 254 [274 P. 326]; 31 Cor.Jur., Husband and Wife, sec. 1270, p. 160.)''

Under this rule we must hold that Anna V. Yearout was not a necessary party to the action to foreclose the materialman's lien on the community property as she was represented there by her husband. ▮ Therefore the judgment foreclosing the lien was binding on her and neither she nor her husband can successfully maintain this action.

The judgment is reversed.

Barnard, P. J., and Griffin, J., concurred.

[Civ. No. 7233. Third Dist. Apr. 24, 1946.]

G. E. OAKS et al., Respondents, v. LEONARD RENSHAW et al., Appellants.

Richard W. Young, Morton G. Hoffmann and Norman J. Ronald for Appellants.

L. C. Smith for Respondents.

THOMPSON, J.—The defendants, Leonard and Della Renshaw, husband and wife, have appealed from a judgment quieting title to forty acres of farm land in Shasta County. The appellants hold a contract to purchase from Federal Farm Mortgage Corporation the forty-acre tract adjoining plaintiffs' land on the east. The chief issue is the proper location of the boundary line between the parties. The answer admitted that plaintiffs own "the SW ¼ of the SE ¼ of Section 32" described in the complaint, but defendants contended that the description by metes and bounds of that sixteenth portion of the section which is added to the description is incorrect. The appellants contend that their western boundary line is substantially 200 feet west of plaintiffs' eastern line as it appears in the description by metes and bounds. The controversy was over the 200-foot strip of land along plaintiffs' eastern boundary. The findings determined that plaintiffs own the entire forty-acre tract described in the complaint. The judgment quiets title in plaintiffs to that tract of land. Judgment by default was entered against the Federal Farm Mortgage Corporation. That company has not appealed.

The appellants concede in their opening brief "that the government line is that which is described in respondents' complaint, because the evidence as to the location thereof was conflicting." But they contend that the findings and judg-

ment are erroneous for failure to determine whether defendants' asserted western boundary line is not the true line since they, "without objection . . . introduced evidence of the agreed boundary, and that evidence stands undisputed in the record."

The complaint is couched in two counts. The second cause of action is for ejectment. The first count seeks to quiet title in plaintiffs to forty acres of land in Shasta County described as follows:

"The SW¼ of SE¼ of Section 32, Township 31 N., R. 5 W., M.D.B.&M., and more particularly described as follows: Beginning at the south quarter corner of section 32, Township 31 N., R. 5 W., M.D.B.&M., said point being marked by a stone monument, and running thence N. 1° 37′ 27″ E. on and along the midsection line 1362.16 feet; thence S. 89° 42′ 40″ E. 1322.28 feet, thence S. 3° 03′ 23″ W. 1366.50 feet, thence N. 89° 35′ 29″ W. on and along the section line 1287.97 feet to the point of beginning."

The answer specifically admits that plaintiffs own the "SW ¼ of the SE¼ of Section 32," but denies the correctness of the metes and bounds description added thereto. The answer makes no reference to a claim of title by acquiescence or agreement to the 200-foot strip of land. An amendment to the answer alleges that appellants own that 200-foot strip of land and describes it by metes and bounds, but fails to allege that it was acquired by agreement of the parties. The amendment prays that title thereto be quieted in appellants. It was stipulated that said amendment may be deemed to have been controverted.

It is apparent from the pleadings and from the record that the only issue which was tried was the determination of the correct eastern boundary line of the southwest quarter of the southeast quarter of section 32, township 31 north, range five west, M.D.B.&M. The answer specifically admits that that tract of land belongs to the plaintiffs, regardless of where a correct description of that subdivision of the section discloses the eastern line to be located. The court determined that issue adversely to the appellants. The record shows, without conflict, that, while there were some statements of witnesses regarding an agreed line, both the court and the attorney for appellants assumed there was no issue involved regarding a claim of title to any portion of plaintiffs' land by acquiescence or agreement. On cross-examination of the plaintiff, Grover

E. Oaks, he was asked if, when he purchased his land from Mrs. Nancy Webb, he did not agree with her that the dividing line extended between two stakes which had been previously referred to. He emphatically denied that fact. The judge then said:

"This may be permissible on where the lines are but there is no question raised in the pleadings as to the agreed boundary. . . . I will let it go in on the question of the witness's knowledge of the corners and lines and things like that. There is no issue in the pleadings as to agreed boundary. . . ."

To that statement Mr. Buchtel, appellants' attorney replied, "No, that is not involved here as such, your Honor."

It will be observed that appellants' attorney conceded that an issue of title by acquiescence was not involved. The evidence regarding an "agreed boundary" was limited to the purpose of showing "the witness's knowledge of the corners and lines and things like that." It was not then nor afterward, during the trial, contended that defendants desired to attempt to prove title by acquiescence. It may not therefore be said that the case was tried on the theory that title by acquiescence was involved in the issues.

In a suit to quiet title to real property, it is true that when the defendants deny the material allegations of the complaint, plaintiffs must rely upon the strength of their title and not upon the weakness of their adversaries' title. (*Williams* v. *City of San Pedro,* 153 Cal. 44 [94 P. 234]; 22 Cal. Jur. § 58, p. 190.) But in this case the defendants specifically admitted plaintiffs' ownership of the fraction of section thirty-two, and merely challenged the accuracy of the location of the eastern line of that subdivision as described by metes and bounds. Title by acquiescence has been held to create an equitable estoppel against adjacent owners of real property from disputing an agreed boundary line, the true location of which they are uncertain, when the parties occupy, cultivate or improve the land to that agreed location for a period of more than five years. As a general rule, one who relies upon equitable estoppel as a cause of action or as a defense, must allege and prove the necessary elements of his claim. When a defendant admits plaintiff's ownership of the fee, but seeks to defeat his title to any portion of the land by asserted fraud or estoppel, the burden is ordinarily on the defendant to allege and establish his claim. (*Honaker* v. *Heatly,* 21 Cal.App. 327 [131 P. 759]; *Reilly* v. *Wright,* 117

Cal. 77 [48 P. 970]; 51 C. J., § 227, p. 248.) In the Honaker case, *supra,* the plaintiff and the defendant settled on separate adjoining quarter sections of government land. The government monuments marking the subdivision corners had disappeared. A land company subsequently made a private survey and purported to reestablish the lost markers. Misled by that erroneous survey, the defendant, with the consent of plaintiff, constructed an irrigation ditch and made other improvements on a strip of land which afterward proved to be on plaintiff's property. To the complaint for ejectment the defendant answered, denying the material allegations thereof and "pleaded affirmatively certain facts which he claims constituted an equitable defense." Judgment was rendered for plaintiff. On appeal the defendant claimed, as the defendants do in the present case, that the court erred in failing to adopt findings upon the alleged equitable defense. The court said:

"It is clear that any acts or conduct of the parties from which an agreement might be inferred were due to a mutual mistake of fact. Under the circumstances, plaintiff was not precluded or estopped from claiming his estate in accordance with the true line when the same was ascertained."

The court further determined that the allegations contained in the answer were insufficient to raise the issue of an equitable defense, and that the trial court did not err in failing to adopt findings thereon. It said in that regard:

"Moreover, the pleading is insufficient in that it fails to state other facts constituting essential elements of estoppel."

But it is not necessary to determine whether a defense of title by acquiescence must be affirmatively alleged and proved in a suit to quiet title, since it was conceded by the defendants in this case that it was not an issue. The evidence, which is asserted on appeal to apply to that subject, was definitely limited by the court to proving "the witness's knowledge of the corners and lines and things like that." That limitation of the evidence was not objected to by the defendants. Their attorney then stated "That [agreed boundary] is not involved here as such."

From the foregoing we must assume that the appellants conceded that the issue of title by acquiescence or agreement was not involved in the trial of this case. It follows that the court was not required to adopt findings on that subject. The case was not tried on that theory. It is too late to raise

that issue upon appeal or even upon the motion for new trial. The motion for new trial was not based upon newly discovered evidence.

The findings and judgment are adequately supported by the evidence. The plaintiffs resided in the vicinity of the land in question for twenty-four years and were familiar with the property. Mr. Oaks located the northeast corner of the southwest quarter of the southeast quarter of section 32. It was marked by an iron pipe set in a copper disc. Plaintiffs purchased their forty-acre tract from Nancy W. Webb sometime subsequent to 1932 and prior to 1940. There is evidence that a man by the name of Spencer formerly occupied a portion of that property under a homestead claim which he had filed. A delapidated building extends partly across plaintiffs' eastern line, in the vicinity of which an old well with crumbling brick walls exists on their land at the northwest corner of the building. They have not been used for many years. The defendants offered some evidence that there was formerly a wire fence extending at least part way along the western line of the disputed 200-foot strip claimed by them, the evidence of which is a wire deeply embedded in the body of a tree. Mrs. Webb testified that her father built the fence thirty-five years ago and pointed to a stake saying to her ''There is your *southeast* corner right down the gully.'' Mr. Oaks testified that there was no evidence of the existence of that fence during the twenty years he was familiar with the property. He denied that he ever went upon the land with Mrs. Webb or that he agreed with her upon the dividing line between their properties. The defendants contracted to purchase their adjoining forty-acre tract from Federal Farm Mortgage Corporation in 1942. John P. Maggard was formerly the owner of the land which the defendants contracted to buy. In 1940 Mr. Oaks employed George L. Pearl, an experienced, licensed civil engineer, who had been familiar with the property and with the government survey thereof for thirteen years, to survey the lines of his forty-acre tract of land. He located the government section corners and the witness trees adjacent thereto, with the exception of one corner. He testified that the accepted corners ''fit perfectly with the witness trees and they are there. They fit with the United States Land Office, ties with the trees and the trees are there.'' He surveyed the tract and made a map and description thereof, which he said was in accordance with the government field notes. He found

that plaintiffs' tract contained 40.87 acres of land. Mr. Oaks and his son then built a fence, in 1940, along his eastern line in accordance with that description. Some dispute arose between Mr. Oaks and John Maggard over the location of that fence. Oaks wrote him a letter saying that since there had been an uncertainty regarding that eastern boundary line, he had employed a surveyor to run the lines, and was constructing a fence in accordance with that survey. He said that he would be glad to have Maggard employ a licensed surveyor "to check this work." That was not done.

The surveyor's map, which was received in evidence, shows that the southern line of the two combined adjoining forty-acre tracts is 2,575.94 feet in length and that plaintiffs' ascertained portion thereof was just about one-half thereof, or 1,287.97 feet in length. It is significant, in the determination of the correct dividing line between those properties that, if defendants' western boundary is 200 feet west of the surveyed line plaintiffs would lose about six acres of land, and their southern line would then be only 1,087.97 feet in length, while plaintiffs' southern line would be about 1487 feet in length. That seems very improbable unless there was an implied conveyance of that easterly 200-foot strip of land by acquiescence, which we have previously held was not an issue in the case.

For the reasons previously stated, the judgment is affirmed.

Adams, P. J., and Peek, J., concurred.